**FERRO-CO CORPORATION, Petitioner,**

v.

**WAR CONTRACTS PRICE ADJUST-
MENT BOARD, Respondent.**

**No. 13351.**

United States Court of Appeals
District of Columbia Circuit.

Argued April 22, 1957.

Decided June 6, 1957.

Mr. Theodore Propp, Washington, D.
C., with whom Mr. Ralph F. Berlow,
Washington, D. C., was on the brief, for
petitioner.

Mr. John G. Laughlin, Jr., Atty., Dept.
of Justice, with whom Asst. Atty. Gen.
George C. Doub and Mr. Melvin Richter,
Atty., Dept. of Justice, were on the brief,
for respondent. Mr. Edward H. Hickey,
Atty., Dept. of Justice, at the time the
record was filed, also entered an appear-
ance for respondent.

Before EDGERTON, Chief Judge, and
PRETTYMAN and BASTIAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

Our petitioner Corporation had war contracts with the Government. The War Contracts Price Adjustment Board renegotiated the Corporation's profits for 1944, and in 1946 it (the Corporation) petitioned the Tax Court of the United States for a redetermination.[1] The Renegotiation Act of 1951[2] abolished the Board. That act provided[3] that the abolition of the Board should not be construed

"to prejudice or to abate any action taken or any right accruing or accrued, or any suit or proceeding had or commenced in any civil cause; but any court having on its docket a case to which the War Contracts Price Adjustment Board is a party, on motion or supplemental petition filed at any time within twelve months [later extended to four years[4]] after the effective date of this section, showing a necessity for the survival of such suit, action, or other proceeding to obtain a determination of the questions involved, may allow the same to be maintained by or against the United States."

The time for filing motions for maintaining against the United States pending cases finally expired on May 22, 1955. Petitioner had not by that time filed the requisite motion or petition. The United States, claiming to appear specially before the Tax Court, moved to dismiss the proceeding, and the Corporation cross-moved for substitution of the United States as party-respondent. The Tax Court granted the Government's motion.

If the problem concerned the abatement of law suits under the common-law rule or under the Reorganization Act of 1949,[5] our opinion in Chairman of U. S. Maritime Comm. v. California Eastern Line[6] would apply, and there would be an end to the matter. But the case before us involves a particular statute, which deals specifically with this Board and court cases to which it is a party. The question is what that statute means.

The critical phrase in the above-quoted statute is "any court having on its docket a case to which the War Contracts Price Adjustment Board is a party". In that phrase, is the Tax Court a "court"? And in a renegotiation case before that court is the Board a "party"?

■ In the Trace case[7] the Tax Court examined the problem at length. It looked to the legislative history, and properly so since the face of the statute is ambiguous. That history shows that Congress meant to include the Tax Court when it said "any court" in the phrase we are considering. The original one-year limitation for filing a motion or supplementary petition was enlarged to two years by an act of July 17, 1952.[8] The report of the Senate Committee on Finance, where the enlargement originated as a Committee amendment to H. R. 5734, reads in part as follows:[9]

"It is the understanding of your committee that in a large number of suits pending in the Tax Court no motion for substitution was made within this 12-month period, and that these suits will be dismissed without consideration on their merits unless the time for filing motions for substitution is extended."

1. 56 Stat. 245 (1942), as amended, 50 U.S.C.A.Appendix § 1191.

2. 65 Stat. 7, 50 U.S.C.A. Appendix § 1211 et seq.

3. 65 Stat. 24, 50 U.S.C.A.Appendix § 1231(h).

4. 68 Stat. 1118 (1954), 50 U.S.C.A.Appendix § 1231 (h).

5. Sec. 9, 63 Stat. 206, 5 U.S.C.A. § 133z–7(b).

6. 92 U.S.App.D.C. 207, 204 F.2d 398 (1953).

7. Trace v. War Contracts Price Adjustment Board, 21 T.C. 303 (1953).

8. Sec. 3, 66 Stat. 753.

9. S.Rep. No. 1837, 82d Cong., 2d Sess. 2 (1952), U.S.Code Congressional and Administrative News 1952, p. 2311.

On the floor of the Senate Senator George explained the amendment in the following terms: [10]

"That section merely gives an additional period of 12 months for the substitution of the proper party in proceedings before the courts, including the Tax Court, in connection with renegotiation proceedings under the World War II Renegotiation law."

In the Eighty-Third Congress, First Session, the House of Representatives passed H.R. 6287, extending and amending the Renegotiation Act of 1951. Representative Reed gave the following explanation on the floor of the House:

"The committee amendment * * extends for 1 year the time in which the United States can be substituted for the World War II War Contracts Price Adjustment Board in suits before the Tax Court." [11]

H.R. 6287 was favorably reported by the Senate Finance Committee.[12] The Senate Report states:

"The bill in section 6 extends for 1 additional year the time in which the United States can be substituted for the World War II Contract Price Adjustment Board in suits before the Tax Court." [13]

Additional amendments to H.R. 6287 were reported by the Senate Committee on Finance, one of which enlarged from two to four years the time for filing the motion or supplemental petition.[14] Senator Millikin's explanation of that amendment was:

"Section 8 extends until March 23, 1955 [sic, May 22, 1955], the time within which the United States can be substituted for the World War II Contract Price Adjustment

Board in suits before the Tax Court." [15]

The Senate amendment was explained on the floor of the House in similar terms.[16] Certainly the legislative history makes clear that Congress intended the provision for substitution of the United States as a party to apply to the Tax Court.

■ The Revenue Act of 1943, in a section [17] which remained in effect throughout various amendments of the Renegotiation Act, contains expressions which clearly indicate Congress intended the Board to be a "party" to renegotiation proceedings before the Tax Court. For example, it provided that the Tax Court "shall have the same powers and duties, insofar as applicable, in respect of the contractor, the subcontractor, the Board and the Secretary" as it has in tax cases. Thus the statute seems to put the contractor and the Board in the same general posture before the court, and the Board in the same posture as is the Commissioner of Internal Revenue in a tax case. The Commissioner is undoubtedly a party to such cases. The Rules of Practice before the Tax Court provide that in tax cases "The Commissioner shall be named as the respondent" [18] and that in renegotiation cases, where the general rules refer to the Commissioner, they shall be taken as referring to the Board.[19]

The result in this case is undoubtedly a harsh one. Our petitioner duly filed its petition for redetermination of alleged excessive profits in a substantial sum ($50,000). It repeatedly and in vain sought a hearing. But we see no escape from the conclusion that when Congress enacted the above-quoted statutory provision in 1951 it meant that the United States must be substituted for the Board in renegotiation cases then pending before the Tax Court.

10. 98 Cong.Rec. 9079 (1952).

11. 99 Cong.Rec. 9523 (1953).

12. S.Rep. No. 643, 83d Cong., 1st Sess. (1953).

13. Id. at 4.

14. 100 Cong.Rec. 14771 (1954).

15. Id. at 14772.

16. Id. at 15215.

17. 58 Stat. 86 (1944), 50 U.S.C.A.Appendix § 1191 (e) (1).

18. Rule 6, 26 U.S.C.A. (I.R.C.1954) § 7453.

19. Rule 64(a).

■ Petitioner argues further that, when, after the Board had ceased to exist, an assistant Attorney General appeared before the Tax Court and moved on behalf of "Respondent" to dismiss for lack of prosecution, he thereby entered a general appearance on behalf of the United States. But at that time, October 3, 1952, the Board was the respondent named in the proceeding and on the motion and the time within which the United States could be substituted had not expired. For the purposes of this suit the Board had a limited existence.[20] The assistant Attorney General certainly did nothing to indicate that he meant to enter the United States as a substitute respondent.

Prettyman, Circuit Judge, dissented.

The order of the Tax Court dismissing the petition must be and is

Affirmed.

20. Defense Supplies Corp. v. Lawrence Warehouse Co., 336 U.S. 631, 93 L.Ed. 931, 69 S.Ct. 762 (1949).